UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| CRYSTAL PACKAGING, INC., | ) Case No. 22-10990 EEB |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

## MOTION TO ASSUME FACTORING AGREEMENT WITH A/R FUNDING

Crystal Packaging, Inc., Debtor in Possession ("Debtor") herein, by and through its undersigned counsel, respectfully submits this Motion to Assume Factoring Agreement with A/R Funding pursuant to 11 U.S.C. § 365(a) (the "Motion"). In support of the Motion, Debtor states as follows:

### Background

1. Debtor filed its petition for relief under subchapter V of chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on March 26, 2022 (the "Petition Date") and is operating as a debtor in possession.

2. Debtor is engaged in the business of manufacturing and contract packaging.

3. For several years pre-petition, Debtor and Associated Receivables Funding, Inc. ("A/R Funding") were parties to an agreement whereby Debtor sold certain receivables to A/R Funding in exchange for payment of a discounted amount of the receivables. A copy of the parties' agreement (the "Agreement") is attached hereto as Exhibit 1. Under the agreement, A/R Funding pays Debtor an initial payment of the face amount of each receivable less a "Daily Discount" of .0356% calculated on the daily balance of "Net Funds Employed." "Net Funds Employed" means the balance outstanding against the available accounts receivable less any discounts, reserve amounts and allowances. The "Daily Discount" is based upon a rate equal to 1.068% every 30 days or part thereof that the Net Funds Employed are outstanding. A/R Funding also holds back 10% of the face amount of each receivable until it receives payment from the account debtor. In practice, Debtor effectively receives 90% of the sold receivables upfront and the remaining 10% after payment by the account debtor, less a service fee that equates to a 12.861% discount on an annual basis.

4. In addition to purchasing Debtor's receivables, A/R Funding has a first priority lien on all sold accounts, other accounts, contracts rights, chattel paper, and other instruments and general intangibles relating to accounts, including moneys on deposit.

5. The Agreement is a necessary component of Debtor's ongoing operations as the Debtor uses the cash generated from the sale of accounts to A/R Funding to fund its day-to-day operations. The Agreement is an ordinary course obligation inasmuch as Debtor and A/R

Funding have operated pursuant to the terms of the Agreement for several years.

6. As stated, under the Agreement, the Debtor sells receivables to A/R Funding. Pursuant to C.R.S. § 4-9-318(a), the Debtor therefore retains no interest in the sold receivables. However, A/R Funding maintains the right under the Uniform Commercial Code ("UCC") to assert a security interest in the purchased receivables (and in fact must do so in order to protect its interest from the claims of other potential creditors of the Debtor). *See* Comment 5, C.R.S. § 4-9-109.

7. Because the Agreement provides for the sale of receivables, Debtor asserts (a) the Agreement is not a financing agreement requiring approval pursuant to 11 U.S.C. § 364 and (b) assumption of the Agreement pursuant to 11 U.S.C. § 365 is the appropriate means of continuing the relationship.

### Motion to Assume Agreement Pursuant to 11 U.S.C. § 365(a)

8. Pursuant to 11 U.S.C. § 365(a), a chapter 11 debtor, subject to the court's approval, may assume or reject any executory contract. The Agreement is an executory contract because it requires future performance from both parties.

9. Assumption or rejection of an executory contract by a debtor is subject to Court review under the business judgment standard. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *In re Mile High Medal Systems, Inc.*, 899 F.2d 887, 896 (10th Cir. 1990); *In re Grayhall Resources, Inc.*, 63 B.R. 382, 384 (Bankr. D. Colo. 1986).

10. Pursuant to the business judgment test, a debtor's decision to assume or reject an executory contract should be approved when the debtor decides, in good faith, that assumption or rejection is beneficial to the estate. *In re Chipwich, Inc.*, 54 B.R. 427, 430-431 (Bankr. S.D.N.Y. 1985) (*In Control Data Corp. v. Zelman*) (*In re Minges*, 602 F.2d 38, 43 (2nd Cir. 1979); ("it is enough, if, as a matter of business judgment, rejection of the burdensome contract may benefit the estate"). Under § 365(a), "the Debtor's business judgment should not be interfered with, absent a showing of bad faith or abuse of business discretion." *Chipwich, Inc.*, 54 B.R. 427, 430-31. As stated by one Court, "Court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course." *Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981).

11. Assumption of the Agreement will greatly benefit the estate because it will enable the Debtor to continue funding its operating expenses through the regular sale of receivables, as it has done in the ordinary course of its business for the last several years.

12. Because of the nature and performance of the parties' Agreement, there is no issue regarding whether A/R Funding will assert post-petition liens on pre-petition property. A/R Funding's ownership and liens on pre-petition receivables existed as of the Petition Date.

13. Further, A/R Funding's ownership of post-petition receivables sold under the Agreement will be absolute. To the extent A/R Funding asserts liens on post-petition receivables,

that is a function of the priority scheme set forth in the UCC and a means of A/R Funding protecting its interest in what it purchases from the claims of other potential creditors. Those liens do not affect the composition of the estate because the Debtor retains no interest in the receivables after sale.

14. The following creditors asserted pre-petition liens in the Debtor's receivables junior to A/R Funding's lien: Power Assist Corporation; Olympic Distribution Center, LLC; Direct Capital; and, the Zimmerman Family Trust. None of these creditors' interests are impaired by the assumption of the Agreement because their liens on receivables terminated on the Petition Date pursuant to 11 U.S.C. § 552(a). To the extent any of these creditors assert a lien pursuant to 11 U.S.C. § 552(b) on the monies received by the Debtor from its sale of post-petition receivables to A/R Funding, that is a separate and distinct issue from whether the Debtor has the right to sell the receivables in the first instance and has no bearing on whether assumption of the Agreement is in the best interests of the estate.[1] The Debtor's use of any proceeds may be addressed in the context of a motion seeking authorization to use cash collateral.

15. There has been no default under the Agreement and therefore 11 U.S.C. § 365(b) is inapplicable.

WHEREFORE, Debtor respectfully requests that the Court approve Debtor's assumption of the Agreement pursuant to 11 U.S.C. § 365(a) and grant such further relief as deemed appropriate.

DATED this 31st day of March, 2022.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ David V. Wadsworth*
David V. Wadsworth, #32066
2580 W. Main Street, Suite 200
Littleton, Colorado 80120
Phone: (303) 296-1999/Fax: (303) 296-7600
dwadsworth@wgwc-law.com
Attorneys for the Debtor in Possession

---

[1] The Debtor does not concede that these junior creditors have enforceable lien rights in the monies generated from the sale of post-petition receivables and reserves all rights if such interests are asserted.